**No. 55670.**—Racine Woolen Manufacturing Company *v.* United States, petition 6734–R (Milwaukee).

FORD, Judge: This petition, filed under the provisions of section 489 of the Tariff Act of 1930, prays for the remission of additional duties incurred by reason of undervaluation of certain glass beads which were entered at the port of Racine, Wis.

The undervaluation herein was occasioned by reason of the disallowance of an item invoiced as "plus 15% buying commission on $635.67—$95.35," which item was deducted by the importer in making entry. At the trial petitioner herein explained this item of commission as follows:

It was simply a method they have over there of regulating the price. It was a discount which adjusted the base price or the list price of the goods to the market price at that particular time. I think that is common practice with many concerns to do that. They have a list price, and at the time the goods are bought, a discount is shown which makes the price current.

It developed at the trial of this petition that at the time of making entry of the involved merchandise the importer had in its possession a letter from the exporter reading substantially as follows:

We beg to refer to our preceding letter of February 23rd and have much pleasure in submitting today a sample card with price list of beads of various descriptions, such as rocailles, 2x and 3x cut beads, bugles, etc. Please understand, that all manufacturers of beads are having the same prices and must sell the goods at fixed terms. As a matter of fact, you have an advantage in as far as if you buy the beads through mediation of a commissioner, you are getting 15% rebate, to be added packing charges and 15% commission, so that you are paying duty only on Kcs. .85—, whereas if you buy from the makers directly—you are paying duty on the full 100%.

The importer at the trial frankly admitted that he had not given to the appraiser at or prior to making the entry of this merchandise the above letter. On cross-examination the petitioner was asked the following questions: "X Q. So you obtained an advantage by buying through this commissionaire?" to which he replied: "No, sir."

(255)

\* \* \* I think that that word "you" is a general term; everybody buying from a commissionaire gets that 15 per cent discount, but if you buy from the manufacturer, then you don't. He didn't mean special. Then he went on in answer to our correspondence and said it isn't possible for people to buy direct from the manufacturer. You must buy from a commissionaire, so that discount is available to everyone.

\* \* \* In case you or John Jones, or anybody else buys from the manufacturer, which I assume wasn't possible, you have to pay the 100 per cent, whereas if you buy through the commissionaire, you do get a 15 per cent advantage. I thought we were right in deducting that 15 per cent.

X Q. Did you disclose this letter to the appraiser at the time of entry?—A. No, sir.

X Q. You had this information before this entry was made?—A. Yes, sir. I didn't conceal it intentionally. I didn't know it was necessary. It was in our file.

X Q. When the Customs Agency requested this information, that is the first time you disclosed that information?—A. I guess so. A copy of the invoice shows that 15 per cent deduction. Isn't that disclosing it?

It thus appears that had the letter, copied above, been delivered to the appraiser prior to the making of the entry, the appraiser would have had no more information regarding the value of the merchandise than was contained in the invoice before the appraiser at the time the entry was filed and during all the time the appraiser was arriving at a value for the merchandise.

The only reason the final appraised value exceeded the entered value was because on entry the importer considered the 15 percent commission as a buying commission, treated it as a nondutiable item, and deducted it on entry, whereas the appraiser considered the 15 percent commission as a selling commission and added it to the entered value, thus raising the entered value by that amount.

The record discloses that at the time of entry the importer asked the appraiser for any information he had as to the correct value of the involved merchandise. The appraiser had no information as to the value of the merchandise other than that shown on the invoice which was then before him.

The appraiser testified that:

Then I proceeded to have the information transmitted to the Customs Information Exchange in New York, according to the established practice, asking them if they had information on such or similar shipments. In due course of business I received a reply from them that it would be well to have the importer write to the commissionaire in Czechoslovakia making request as to the proper value.

Thereafter, the appraiser requested the importer to write to the shipper of the merchandise asking for information as to the correct value of the merchandise, with which request the importer complied, and when the reply was received, the same was delivered to the appraiser. It appears that the appraiser's decision to advance the entered value by 15 percent was based upon information contained in the letter which the importer secured from the shipper.

The only point at issue here between the importer and the appraiser was the 15 percent commission, the importer contending it was a buyer's commission and, therefore, no part of the dutiable value, and the appraiser contending it was a selling commission and, therefore, a part of the dutiable value. From the start, this point was clear to both the importer and the appraiser, and in the final analysis the appraiser's determination that this commission should be included as a part of the value of the merchandise was based upon information furnished by the importer.

The importer tried this petition without the aid and assistance of counsel, doubtless on account of the small amount involved. With the assistance of counsel

perhaps a more satisfactory record might have been presented. However, the writer of this opinion conducted the trial of this petition and observed the demeanor of the witnesses on the stand, and it is the writer's opinion that the petitioner herein was completely honest in all its dealings with the customs authorities in connection with this entry.

Based upon the record before us, we are satisfied that in entering the merchandise at a value less than that found upon final appraisement, the petitioner had no intent to defraud the revenue of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the true value of the merchandise. The petition is therefore granted. Judgment will be rendered accordingly.